[Civ. No. 68040. Second Dist., Div. Seven. Mar. 5, 1984.]

DOROTHEA V. JONES, Plaintiff and Appellant, v.
WENDELL F. DEETER et al., Defendants and Respondents.

**COUNSEL**

Douglas B. Haynes and Wiessman & Haynes for Plaintiff and Appellant.

Dennis Michael Schuster and Charles R. Weldon for Defendants and Respondents.

---

OPINION

SCHAUER, P. J.—The issue is whether an owner of property abutting a sidewalk parkway is liable to a pedestrian who is injured when trees on the parkway create a dangerous condition on the sidewalk. Under the circumstances presented here, we find that the dangerous condition is not attributable to the abutting owner. We therefore affirm a summary judgment in favor of that owner.

FACTS

On June 3, 1980, plaintiff Dorothea Jones fell and sustained injuries while walking on a public sidewalk which abuts the property of defendant, Wendell Deeter. Plaintiff claims that she tripped on a break in the sidewalk; this break, she alleges, was caused by the roots of magnolia trees pressing up from underneath the concrete. The offending magnolia trees grew on a grassy strip or "parkway" which is located between the sidewalk and the public street running in front of defendant's home. Defendant allegedly maintained this parkway by cutting the grass and watering the grass and trees. Plaintiff filed a complaint for damages against defendant and the City of Long Beach (the City), alleging negligence in maintenance of the sidewalk and the magnolia trees.

Defendant filed a motion for summary judgment. In a declaration supporting this motion, defendant claimed that the City owned the magnolias and that City workers performed all maintenance on them. Defendant also introduced a surveyor's report showing that the sidewalk and parkway were included in the area dedicated to the City as Second Street. Apparently relying on this report, the trial court granted summary judgment. Plaintiff appeals, contending that defendant had ownership and control of the parkway and therefore had a duty to maintain it in a safe condition.

1. *Defendant held legal title to the parkway and sidewalk.*

Two statutory provisions justify the conclusion that defendant held legal title to the land on which the accident occurred; specifically, these provisions make clear that defendant held title to the land out to the center of Second Street, the street running in front of his property.

First, section 831 of the Civil Code provides: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the

contrary may be shown." Here, defendant owned all of lot 7, a parcel of land bounded by Second Street. Since no showing to the contrary was made on the summary judgment motion, defendant is presumed to own to the center of the way; this ownership includes the parkway and sidewalk where plaintiff's accident occurred.

Additionally, section 1112 of the Civil Code provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." Here the deeds by which defendant acquired title to all of lot 7 show no intention to except the sidewalk, parkway or soil under the street from the transfer. Nor has defendant alleged that such an exception occurred earlier in the chain of title. Accordingly, the deeds transferred these areas to the defendant.

### 2. *The sidewalk and parkway were dedicated to the city.*

Defendant thus held a fee simple in the sidewalk, parkway and half of the street. This fee simple is subject to a dedication, made by the subdivider, of "the streets, alleys, avenues and boulevards shown" on the subdivision map. The surveyor's report, submitted on the summary judgment motion, shows that the sidewalk and parkway areas were included in the area dedicated as Second Street on the subdivision map. Accordingly, the entire area relevant to this suit is owned by the defendant, but dedicated to the city.

### 3. *Defendant had a statutory duty to maintain the parkway and sidewalk.*

■ A dedication is legally equivalent to the granting of an easement. (*Safwenberg* v. *Marquez* (1975) 50 Cal.App.3d 301, 307 [123 Cal.Rptr. 405].) ■ While the owner of an easement generally bears the responsibility for its maintenance (*Rose* v. *Peters* (1943) 59 Cal.App.2d 833, 835 [139 P.2d 983]), this is not so with regard to sidewalks and parkways. Section 5610 of the Streets and Highways Code provides: "The owners of lots or portions of lots fronting on any portion of a public street or place when that street or place is improved or if and when the area between the property line of the adjacent property and the street line is maintained as a park or parking strip, shall maintain any sidewalk[1] in such condition that the sidewalk will not endanger persons or property and maintain it in a condition which will not interfere with the public convenience in the use of those works or areas save and except as to those conditions created or maintained in, upon, along, or in connection with such sidewalk by any

---

[1] The term sidewalk here refers to both the sidewalk and parkway. (Sts. & Hy. Code, § 5600.)

person other than the owner, under and by virtue of any permit or right granted to him by law or by the city authorities in charge thereof, and such persons shall be under a like duty in relation thereto." Hence, the general rule imposing the duty of care on the owner of the easement does not apply and the owner of property abutting the sidewalk or parkway bears a duty to maintain such sidewalk or parkway.

■ 4. *The duty to repair the sidewalk is not the basis for a duty of care toward pedestrians.*

Under section 5610 the abutting owner bears the duty to repair defects in the sidewalk, regardless of whether he has created these defects. It was felt, however, that it would be unfair for such an owner to be held liable to travelers injured as a result of sidewalk defects which were not of the owner's making. Thus the "Sidewalk Accident Decisions" doctrine arose; this doctrine holds that the abutting property owner is not liable in tort to travelers injured on the sidewalk, unless the owner somehow creates the injurious sidewalk condition. (*Schaefer* v. *Lenahan* (1944) 63 Cal.App.2d 324 [146 P.2d 929]. See also, e.g., *Russell* v. *Sincoe Realty Co.* (1922) 293 Mo. 428 [240 S.W. 147]; *Dixon* v. *Missouri Pac. Ry. Co.* (1919) 104 Kan. 404 [179 P. 548]; *City of Rochester* v. *Campbell* (1890) 123 N.Y. 405 [25 N.E. 937].)

5. *Abutting owners are liable to pedestrians for defects in the sidewalk attributable to the owners' own negligence.*

When the defect in the sidewalk is somehow attributable to the abutting property owner, the sidewalk accident decisions doctrine does not apply. Traditionally, this rule giving rise to liability of owners was invoked in cases where the property owner left some dangerous or slippery material on the sidewalk and a traveler tripped on this material (*Kopfinger* v. *Grand Central Public Market* (1964) 60 Cal.2d 852, 858-860 [37 Cal.Rptr. 65, 389 P.2d 529]), or where the owner altered or constructed the sidewalk for his own benefit and the traveler slipped on the part of sidewalk so altered or constructed by the owner. (*Sexton* v. *Brooks* (1952) 39 Cal.2d 153, 157 [245 P.2d 496].) Recently, however, the rule was extended to a case similar to the one at bench. In *Moeller* v. *Fleming* (1982) 136 Cal.App.3d 241 [186 Cal.Rptr. 24], the plaintiff fell on a break in the sidewalk; the break was allegedly caused by the roots of a tree located on defendant's property. The court noted the abolition of the traditional distinction between injuries caused by "natural conditions" and those caused by affirmative acts (*id.* at p. 245) and held that defendant could be held liable.if it were proved that he "suffer[ed] the roots of his tree to cause . . . a dangerous condition on the adjacent public sidewalk." (*Id.* at p. 245.)

The case at bench differs from *Moeller* in one significant particular; here, the disruptive roots extended from a tree which was located in the parkway, rather than in defendant's front yard, as was the case in *Moeller*. This case turns on this distinction. As explained below, the unsafe condition caused by the magnolias, here, is attributable to the City, not to defendant. Accordingly, defendant is not liable in tort for injuries caused by this condition.

6. *Whether a parkway defect is attributable to an abutting owner depends on the historical pattern of care with regard to the parkway.*

It has been held that abutting owners may be liable in tort to pedestrians injured on the parkway. (*Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826 [87 Cal.Rptr. 173].)[2] We think this liability may also exist in cases such as this one, where the pedestrian has been injured on the sidewalk by a defect having its origin in the parkway. However, under the sidewalk accident decisions doctrine, this liability exists only if the malignant parkway defect is somehow attributable to the abutting owner.

In *Low* v. *City of Sacramento, supra,* 7 Cal.App.3d 826, the court considered whether an abutting owner was liable for an injury caused by a defect in the parkway. In that case it was shown that "Sacramento property owners, not the municipality, maintain [the parkways] in front of their individual parcels." (*Id.,* at p. 830.) In accord with this practice, the abutting owner in *Low* maintained the parkway in front of its property. In doing so, however, that owner allowed ruts and holes to form on this parkway. The plaintiff in *Low* fell into one of these depressions, sustained injuries and sued. The appellate court held that this plaintiff had stated a cause of action against the abutting owner for these injuries.

The court based this conclusion on the fact that the dangerous condition was directly attributable to the abutting owner. The court noted: "Decisions in other states justify the generalization that when a private owner maintains the [parkway], he exercises control over it, subordinate only to the municipality's street easement; thus that . . . owner is liable when his failure to maintain [the parkway] in reasonably safe condition causes injury to a pedestrian. . . ." (*Id.,* at p. 833.) The court therefore concluded that since the abutting owner "undertook to maintain the grassy . . . strip" and then "permitted [it] to deteriorate," this owner was liable to pedestrians injured as a result of the dangerous conditions caused by this deterioration. (*Id.,* at p. 834.)

---

[2]The property owner in *Low* was the County of Sacramento; hence, that case was decided under Government Code, section 835. However, the court made its decision by analogy to tort law as it applies to private owners.

The analysis in *Low* provides a basis for determining when a dangerous parkway condition is attributable to an abutting owner, so as to impose a duty on that owner to alleviate the danger. This determination turns upon the historical patterns of care with regard to local parkways. ■ Thus, in some localities, by virtue of past practice, abutting owners maintain the surface area of parkways. (*Id.*, at p. 830.) In such localities, these owners bear a duty to keep these surface areas in reasonably safe condition. Dangerous conditions caused by neglect of this duty are attributable to the abutting owners and may give rise to liability in tort.[3] On the other hand, in localities where the city has habitually maintained the surface of the parkway, it is solely the city's duty to keep this surface area safe for pedestrians; hazards on such areas are not attributable to abutting owners.

We hold that a similar but separate rule applies with regard to the trees planted on the parkway. ■ In settings where the abutting owners have planted the trees or have habitually trimmed or cared for them, these abutting owners have the duty to maintain the trees in a safe condition toward pedestrians. The contrary situation exists when the city has planted the trees on the parkway and has performed all necessary maintenance on them. Under these latter circumstances, the duty to maintain the trees in safe condition rests with the city; dangerous conditions caused by the trees are attributable to the city, not to abutting owners.

■ *7. The defect alleged here is not attributable to defendant.*

Finally, we apply this last stated rule to the case at bench. Here, defendant did no more than water the parkway. His uncontroverted declaration, which may be accepted for summary judgment purposes (*Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 638 [177 Cal.Rptr. 445]), states that all maintenance of the trees was performed by employees of the City. Since the City habitually maintained these trees, the rule set forth above provides that the city alone bore the duty to keep the trees in reasonably safe condition towards pedestrians.

We also hold that this conclusion is unaffected by the fact that defendant mowed, edged and watered the parkway. These acts do suggest that defendant did have a duty to maintain the surface area of the parkway. This duty may have entailed some minor care of the trees, such as removing fallen leaves or hanging branches. We cannot say, however, that this duty required defendant to make the major repairs required here, i.e., digging up roots and repairing the sidewalk. On the contrary, the circumstances of

---

[3]Even under these circumstances, the municipality appears to share liability with the abutting owner. (See *Low* v. *City of Sacramento, supra,* 7 Cal.App.3d at p. 833.)

this case indicate that these bulging roots, and any injuries caused by them, are attributable to the City which maintained the trees.

This result need have no great fiscal impact on the City of Long Beach. Should it tire of its responsibility to care for the magnolias at issue here, this task may be passed on to abutting owners under the procedure established by Streets and Highways Code, section 5600 et seq. Until this is done, however, it would be fundamentally unfair to hold an abutting owner liable to pedestrians injured by defects in the sidewalk and parkway, when past practice has given that owner every reason to believe that the City has undertaken the responsibility to repair these defects.

The judgment is affirmed.

Thompson, J., and Johnson, J., concurred.